[L. A. No. 20256.   In Bank.   Oct. 28, 1948.]

ESTHER F. McELROY, Respondent, v. BENJAMIN J. McELROY et al., Defendants; EMMA McELROY et al., Appellants.

830

Brooks Gifford, Delmas R. Richmond, Frederick G. Stoehr and Robert J. Johnston for Appellants.

Herbert Gall and Edward Fitzpatrick for Respondent.

GIBSON, C. J.—The plaintiff filed an action for divorce on the ground of extreme cruelty against Benjamin McElroy, her husband, and joined his parents, Emma and James McElroy, alleging that they were liable to the plaintiff for certain community funds which had been transferred to them by their son during his marriage. The husband could not be served personally within this state, but summons was ordered published, and he was served personally and by registered mail in the State of Oregon. He did not answer or appear, and his default was duly entered. The parents appeared and defended.

The wife was given a judgment of divorce which awarded her certain community property situated in this state consisting of household furniture, 14 government bonds, $150 in cash, and a 1930 automobile. She was also awarded the custody of their infant son. The husband did not appeal from the judgment.

The court further found that the wife was entitled to $3,000 of the funds transferred by the son to his parents, and she was given judgment against them in that sum. At the time the transfers were made, the parents lived in California and deposited the money in a California bank, but before this action was brought the money was removed to Oregon, where the parents now reside. The court found that no consideration had been given for the transfer and that the parents had received the money with knowledge that the funds were community property.

The parents have appealed, contending primarily that the court lacked jurisdiction to enter a money judgment against them. They argue that the effect of the judgment was to adjudicate the respective interests of the husband and wife in property not located in California, and that the court was without power to render such a judgment since the husband was not personally served within this state.

■ The trial court found that the parents held the money transferred to them as trustees for plaintiff and her husband, and the evidence amply supports this finding. It was stipulated that $6,000 derived from the earnings of the husband after his marriage was transferred to the parents and no claim is made that the money was intended as a gift to them or as payment of any legal obligation owed to them. Plaintiff testified that the purpose of the transfer was for "safekeeping." In a letter from James McElroy to his son, the father stated, "We will be on the lookout for your Insurance Policy and such funds as you allot to us will be carefully guarded as a nest egg for you when you are discharged. It is then you will need it."

■ The trust having been created from community funds, the duty of the parents under the trust ran to the community, and the wife's interests therein could be enforced by her in the divorce action if there was some basis for the court's jurisdiction over the trust obligation. (*Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557].) ■ Ordinarily the beneficiary of a trust may enforce his rights by proceeding either against the trust property or against the trustee personally. (*Title Insurance etc. Co.* v. *Ingersoll*, 158 Cal. 474 [111 P. 360]; *Lathrop* v. *Bampton*, 31 Cal. 17 [89 Am. Dec. 141]; see Rest. Trusts, §§ 198, 199.) ■ Where, as in this case, the proceeding is brought to enforce the trustees' obligation, and the judgment does not undertake to operate directly on the corpus of the trust, the court's power to act is based upon jurisdiction over the trustees and not upon the location of the trust res. The situation is analogous to one in which a debt may be regarded as an asset wherever the debtor is subject to suit. (*Estate of Waits*, 23 Cal.2d 676, 680 [146 P.2d 5].) ■ Accordingly, the obligation of the parents to the community may be treated as a community asset wherever the parents may be sued, and, the parents having appeared, the court had jurisdiction over them and over their personal obligation to the community. ■ In

dividing community assets located in California, the court exercises jurisdiction *in rem,* and personal service on the husband within the state is unnecessary. (See Beale, The Conflict of Laws [1935], vol. 1, p. 437; Restatement, Judgments, § 32; note 126 A.L.R. 664; Code Civ. Proc., § 412.) Although due process requires that reasonable notice and opportunity to be heard be given to the defendant, this requirement was fulfilled in the present case by obtaining an order for publication of summons and personally serving the husband in the State of Oregon. (Code Civ. Proc., § 413.)

The wife was entitled to recover for her own use that portion of the trustees' obligation which the court was authorized to assign her under sections 146 and 147 of the Civil Code, which relate to the division of community property upon dissolution of a marriage (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]), and the court properly awarded a money judgment in her favor against the parents. (*Title Ins. etc. Co.* v. *Ingersoll,* 158 Cal. 474, 479-480 [111 P. 360].)

It is also contended that the trial court erred in refusing to grant them a continuance on the ground that the father could not attend the trial because of illness. The unavoidable absence of a party does not necessarily compel the court to grant a continuance. (*Sheldon* v. *Landwehr,* 159 Cal. 778, 781 [116 P. 44]; *Lynch* v. *Superior Court,* 150 Cal. 123 [88 P. 708].) In such cases the court should be governed by the course which seems most likely to accomplish substantial justice, and it may take into consideration the legal sufficiency of the showing in support of the motion and the good faith of the moving party. (*Sheldon* v. *Landwehr, supra,* p. 781; *Barnes* v. *Barnes,* 95 Cal. 171, 177 [30 P. 298, 16 L.R.A. 660].)

The parents were notified on September 16, 1946, that the case was set for trial on November 6. When the case was called on the latter date, they moved for a continuance, basing the motion on an affidavit of their attorney which recited that on November 4 he telephoned to the mother in Oregon, and she told him that the father had been ill and would be unable to attend the trial. In opposition to the motion plaintiff filed an affidavit in which her attorney stated that on November 1, he had been informed by counsel for the parents that they were not expected to be at the trial because, in view of the cost of the trip from Oregon, "they

certainly would not spend the money considering the amount involved'' in the suit. The motion was denied on November 6, but the trial was not begun until the morning of November 8, and that same afternoon it was continued until November 12. Although the parents had ample opportunity in the interval between November 4 and November 12 to augment their showing by presenting affidavits of themselves or their physician, they chose to stand solely on the affidavit of their attorney and made no further effort to support their request for a continuance. Furthermore, the mother's testimony was introduced by deposition, and, at the close of the evidence, the court suggested a continuance on its own motion in order to secure the testimony of the father and the son, but counsel was unable to assure the court that either would appear. Under these circumstances it is clear that there was no abuse of discretion in refusing to grant a continuance.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.